# CASE NO. 22-40057

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**On Appeal from the United States District Court
For The Eastern District of Texas**

**In the Matter of:**

**Frank Vaughan,
Plaintiff – Appellant;**

**Michael Joseph Collins; William A. Brewer, III; Brewer Storefront, P.L.L.C,
Appellants**

v.

**Lewisville Independent School District, Defendant – Appellee**

## APPELLATE BRIEF

**BREWER STOREFRONT**

William A. Brewer III
State Bar No. 02967035
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEY FOR APPELLANTS**

## CERTIFICATE OF INTERESTED PERSONS

Appellant certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1) **Plaintiff-Appellant**:

   Frank Vaughan

2) **Appellants**:

   Michael J. Collins; William A. Brewer III; and Brewer Storefront, PLLC

3) **Defendant-Appellee:**

   Lewisville Independent School District

4) **Counsel for Appellants:**

   William A. Brewer III/Brewer Storefront, PLLC

5) **Counsel for Appellee:**

   Meredith Prykryl Walker/Walsh Gallegos Trevino Russo & Kyle P.C.

Dated: April 28, 2022

Respectfully submitted,

**BREWER STOREFRONT**

By: */s/ William A. Brewer III*
    William A. Brewer III
    State Bar No. 02967035

1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015
**ATTORNEY FOR APPELLANTS**

2

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument.  They believe oral argument will assist the Court in understanding the factual and legal background of this matter.

# **TABLE OF CONTENTS**

**Page**

**CERTIFICATE OF INTERESTED PERSONS** .........................................2

**STATEMENT REGARDING ORAL ARGUMENT**...............................3

I. INTRODUCTION ...................................................................................1

II. JURISDICTIONIONAL STATEMENT ................................................3

      1.    This is an appeal by a Plaintiff in a civil rights case, his attorneys, and their law firm from a memorandum opinion and order holding them jointly and severally liable for attorney's fees awarded under 52 U.S.C. 10310(e) and 28 U.S.C. 1927. The District Court had jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C § 1343(a)(4)...............................................................................3

      2.    The memorandum opinion and order was entered on December 28, 2021. Appellants timely filed their notice of appeal on January 27, 2022.........................................................3

      3.    This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §1291 and Federal Rule of Appellate Procedure 4.    3

III. STATEMENT OF ISSUES PRESENTED FOR REVIEW ...............................4

      4.    Whether a challenge by a white plaintiff (under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the United States Constitution), to an electoral system which disadvantages people of color, is: (i) *per se* so frivolous and unfounded that its commencement warrants punitive sanctions under 28 U.S.C. § 1927 and/or 52 U.S.C. § 10310(e); and/or (ii) sufficiently frivolous and unfounded that aggressive depositions conducted therein justify .........................................4

      5.    Whether the district court erred in assessing sanctions against Vaughan under 28 U.S.C. § 1927, given that non-attorneys are not subject to sanctions under this statute.............4

      6.    Whether the district court erred in assessing sanctions against Brewer Storefront PLLC under 28 U.S.C. § 1927,

i

given that entities are not subject to sanctions under this statute. ...................................................................................4

IV. STATEMENT OF THE CASE ................................................5

    A.    Procedural History...............................................................5

V. STATEMENT OF THE FACTS...............................................8

    1.    Discriminatory Effects of At-Large Elections ..........................12

VI. SUMMARY OF ARGUMENTS.............................................14

VII. APPLICABLE STANDARDS................................................16

VIII. ARGUMENTS AND AUTHORITIES..................................16

    A.    THE DISTRICT COURT ERRED IN AWARDING FEES UNDER 52 U.S.C. § 10310(e) ..............................................16

        1.    Attorney's Fees Award Under 52 U.S.C. § 10310(e)..............16

        2.    The District Court's Ruling .......................................17

        3.    Vaughan's Claims Are Not Frivolous Unreasonable, or Without Foundation. ..............................................17

    B.    THE DISTRICT COURT ERRED IN AWARDING ATTORNEYS' FEES PURSUANT TO 28 U.S.C. 1927 ...................20

IX. CONCLUSION.....................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Ayla v. Enerco Gp., Inc.*,
   569 F. App'x 241 (5th Cir. 2014) .........................................................21

*Bryant v. Military Dep't*,
   597 F.3d 678 (5th Cir. Miss. 2010) ....................................................20

*Claiborne v. Wisdom,*
   414 F.3d 715 (7th Cir. 2005) (examining the Fourth and Eleventh
   Circuits' decisions regarding whether § 1927 applies to law firms).................23

*Dean v. Riser,*
   240 F.3d 505 (5th Cir. 2001) .................................................16, 17, 18

*Hanrahan v. Hampton,*
   446 U.S. 754, 100 S. Ct. 1987 (1980) (*per curiam*) ...........................17

*Lewis v. Brown & Root, Inc.*
   711 F.2d 1287 (5th Cir. 1983) ...........................................................21

*Lewis v. Cont'l. Bank Corp.,*
   494 U.S. 472, 110 S.Ct. 1249 (1990).................................................7

*Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*,
   No. 12-2143-STA, 2012 WL 3683492 (W.D. Tenn. Aug. 24, 2012) ...............20

*Perry-Bey v. City of Norfolk, Va.,*
   678 F. Supp. 2d 348 (E.D. Va.), *aff'd*, 333 F. App'x 733 (4th Cir.
   2009) ..............................................................................................19

*Procter Gamble Co. v. Amway Corp.,*
   280 F.3d 519 (5th Cir. 2002) ..................................................*passim*

*Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.,*
   38 F.3d 1414 (5th Cir. 1994) ............................................................22

*United States v. Hays,*
   515 U.S. 737 (1995)......................................................................1, 19

*Walker v. City of Bogalusa*,
  168 F.3d 237 (5th Cir. 1999) ...............................................................16

**Statutes**

28 U.S.C. 1927 ..............................................................3, 20, 21, 22

28 U.S.C. §1291 ...............................................................................3

28 U.S.C. § 1331 ...............................................................................3

28 U.S.C. § 1343(a)(3) ......................................................................3

28 U.S.C § 1343(a)(4) ........................................................................3

28 U.S.C. § 1921, ROA.1030-1036 ...................................................7

28 U.S.C. § 1927 .......................................................................*passim*

42 U.S.C. § 1988(b) .........................................................................17

42 U.S.C. § 1988(b), ROA.1075-1982 ...............................................7

52 U.S.C. §10310(e) ..................................................................*passim*

52 U.S.C. § 10302(a) .......................................................................19

52 U.S.C. § 10301 .............................................................................9

Voting Rights Act .....................................................................*passim*

Voting Rights Act Section 2 ..............................................4, 5, 17, 23

**Other Authorities**

Fed. R. App. P. 32(a)(5) ..................................................................28

Fed. R. App. P. 32(a)(6) ..................................................................28

Fed. R. App. P. 32(a)(7)(B) .............................................................28

Fed. R. App. P. 32(a)(7)(B)(iii) .......................................................28

Rule 11 ............................................................................................22

Rule 28.2.1 .................................................................................................2

U.S. Const. amend. XIV and XV ...........................................................10

United States Constitution Fourteenth and Fifteenth Amendments .............4, 10, 17

# I.

## __INTRODUCTION__

This appeal arises from a constitutional and Voting Rights Act ("VRA") challenge to a racist, likely-unconstitutional and illegal electoral scheme, brought *pro bono* by counsel on behalf of a concerned resident of LISD. Vaughan sought no compensation—only declaratory and injunctive relief. The substantive challenge he advanced was well-established in case law: the district's at-large electoral system diluted minority votes, disenfranchising impoverished, minority locales. Unfortunately, the district court not only rejected Vaughan's claim, primarily because Vaughan is white but imposed punitive sanctions on Plaintiff and his counsel for bringing it.

The Supreme Court has emphasized that standing in racial gerrymandering cases is "not easy" to adjudicate, because it is "difficult to discern why a particular citizen was put in one district or another."[1] In the matter below, the plaintiff did not identify as Black or Latino, but nonetheless challenged an electoral scheme that disadvantaged both groups—arguing that the "equitable system of representation" guaranteed by the Constitution and the VRA was denied to the entire district. The district court granted summary judgment on the basis that the plaintiff was white, and thus could not allege a cognizable Article III injury based on a racist voting

---

[1] *United States v. Hays*, 515 U.S. 737 (1995).

system that ***advantaged*** whites.  Importantly, that decision cited no on-point Fifth Circuit or Supreme Court precedent precluding Plaintiff's claim. Even so, the district court went a step further: it imposed punitive sanctions under 28 U.S.C. § 1927 on both Vaughan and his *pro bono* counsel for their decision to commence the claim, which they aggressively pursued in discovery. .

This appeal challenges that award of sanctions as an abuse of discretion.  Even if the district court's grant of summary judgment was not itself reversible error (Appellants believe it is), counsel's good faith effort to achieve standing under the VRA does not warrant punishment.  Nor are sanctions warranted for the depositions that occurred in the case, which occasioned no unusual objections, motions to quash, or other resistance from the defendant.

It is one thing to reject advances in voting-rights jurisprudence at this moment in history.  It is another to punish counsel for seeking them.  For the reasons explained below, the district court's sanctions order should be reversed and remanded.

## II.

## <u>JURISDICTIONIONAL STATEMENT</u>

1.      **This is an appeal by a Plaintiff in a civil rights case, his attorneys, and their law firm from a memorandum opinion and order holding them jointly and severally liable for attorney's fees awarded under 52 U.S.C. 10310(e) and 28 U.S.C. 1927. The District Court had jurisdiction under <u>28 U.S.C. § 1331</u>, <u>28 U.S.C. § 1343(a)(3)</u>, and <u>28 U.S.C § 1343(a)(4)</u>.**


2.      **The memorandum opinion and order was entered on December 28, 2021. Appellants timely filed their notice of appeal on January 27, 2022.**


3.      **This Court has jurisdiction to hear this appeal pursuant to <u>28 U.S.C. §1291</u> and <u>Federal Rule of Appellate Procedure 4</u>.**

## III.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

4.  Whether a challenge by a white plaintiff (under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the United States Constitution), to an electoral system which disadvantages people of color, is: (i) *per se* so frivolous and unfounded that its commencement warrants punitive sanctions under <u>28 U.S.C. § 1927</u> and/or <u>52 U.S.C. § 10310(e)</u>; and/or (ii) sufficiently frivolous and unfounded that aggressive depositions conducted therein justify

5.  Whether the district court erred in assessing sanctions against Vaughan under <u>28 U.S.C. § 1927</u>, given that non-attorneys are not subject to sanctions under this statute.

6.  Whether the district court erred in assessing sanctions against Brewer Storefront PLLC under <u>28 U.S.C. § 1927</u>, given that entities are not subject to sanctions under this statute.

4

IV.

**STATEMENT OF THE CASE**

A.     **Procedural History**

On February 12, 2019, Frank Vaughan filed a complaint against Lewisville ISD ("LISD" and the "District") and members of its Board of Trustees in their official capacities (collectively the "individual defendants") for declaratory and permanent injunctive relief concerning Section 2 of the Voting Rights Act.[2] In his complaint, Vaughan plead his United States citizenship, status as a registered voter within the District, active membership in the community, and included allegations that the District's current at-large voting system denies his "friends and neighbors, African Americans, Hispanics, Asians, and other minorities, an equal opportunity to elect representatives of their choice," and his prior request to the board and in a newspaper article he wrote that "LISD switch to an alternative voting scheme" such as a single-member district voting scheme, which the District flatly rejected.[3]

LISD timely filed an answer[4] to Vaughan's complaint in March 2019 along with a motion to dismiss.[5] In its answer, the District admitted Vaughan's citizenship,

---

[2] ROA.14-42.

[3] ROA.14-42 [¶ 14].

[4] ROA.93-110.

[5] LISD sought dismissal of Vaughan's claim against the individual members of the LISD Board of Trustees in their official capacities as redundant to the claims brought against the District. ROA.88-92. LISD's motion was granted and the claims against the individual defendants were dismissed in December 2019.

he is a registered voter within the bounds of the District, and that it had rejected requests he made prior to filing the complaint that LISD change its voting system.[6] Thereafter, between October 14, 2019, and November 12, 2019, seven depositions were taken—six by Vaughan, one by LISD.[7]

On November 22, 2019, while its motion to dismiss the individual defendants remained pending, LISD filed a motion for summary judgment arguing for dismissal of Vaughan's claims based not only on the merits but on its allegation he lacked standing.[8] In response, Vaughan argued his standing to bring the claims as an "aggrieved person," and that the evidence before the court established the preconditions to claim vote dilution in violation of the VRA, and summary judgment was inappropriate given the fact-intensive nature of the action.[9] LISD replied on January 17, 2020.[10] On January 24, 2020, Vaughan filed a sur-reply on.[11]

LISD's motion for summary judgment was granted on July 31, 2020 ("The Summary Judgment Order") concluding Vaughan lacked standing because, white male voters were not part of any minority group whose votes he alleged were being

---

[6] ROA.93-110 [¶¶ 9, 14].

[7] ROA.1075-1982 [Exs.A-E].

[8] ROA.398-423.

[9] ROA.548-587.

[10] ROA.896-911.

[11] ROA.929-943.

diluted therefore, as a white male, he suffered no injury in fact depriving him of Article III standing. Vaughan's claims were dismissed for lack of jurisdiction.[12] On August 10, 2020, LISD moved for entry of a separate judgment and award of costs[13] which the court granted, the latter under 28 U.S.C. § 1921.[14] Final Judgment was entered on October 16, 2020.[15] Vaughan filed his notice of appeal on November 16, 2020.[16]

During pendency of his appeal, Vaughan relocated outside the District, rendering his complaint moot.[17] Vaughan voluntarily dismissed his appeal in February 2021.[18] The following month, LISD filed its motion for attorneys' fees under 28 U.S.C. § 1927, or alternatively 52 U.S.C. §10310(e) and 42 U.S.C. § 1988(b).[19] Vaughan filed an opposition arguing LISD was not a prevailing defendant and neither he nor his counsel engaged in sanctionable conduct.[20] LISD filed a

---

[12] ROA.980-994.

[13] ROA.995-1001.

[14] ROA.1030-1036.

[15] ROA.1037-1045.

[16] ROA.1069-1070.

[17] As the Supreme Court has noted, "it is not enough that a dispute was very much alive when the suit was filed; ...[t]he parties must continue to have a personal stake in the outcome of the lawsuit. *Lewis v. Cont'l. Bank Corp.*, 494 U.S. 472, 477-78, 110 S.Ct. 1249 (1990).

[18] ROA.1073-1074.

[19] ROA.1075-1982.

[20] ROA.1988-1995.

reply[21] followed by entry of the court's memorandum opinion and order granting LISD's motion for attorney's fees against Vaughan, his counsel, and their firm- the Brewer Storefront ("The Sanctions Order") on December 28, 2021.[22] Vaughan, his counsel ("Attorney Appellants"), and the Brewer Storefront filed their appeal of The Sanctions Order on January 27, 2022.[23]

## V.

## STATEMENT OF THE FACTS

The at-large system for electing the seven-member Lewisville Independent School District ("LISD" or "District") Board of Trustees ("Board"), as currently employed by the District, effectively denies membership and representation to African Americans, Hispanics, Asians and other people of color.  Worse yet, it does so while people of color comprise a significant portion of eligible voters within LISD – and an even larger percentage of the District's student population.[24]

## LISD

In aggregate, LISD is racially and ethnically diverse, with students of color forming over 62% of the total student body in 2020-21, according to the Texas Education Agency ("TEA"). In particular, Hispanic students make up 29.6% of the

---

[21] ROA.1996-2002.

[22] ROA.2003-2020.

[23] ROA.2021-2022.

[24] ROA.4.

student body, and are the second largest demographic group. Yet, an achievement gap exists between a small fraction of schools that enroll a majority of white students and the schools in the District that educate predominantly children of color. The Board, which oversees a nearly $579 million budget, is failing the non-white population. In their most formative years, non-white children within LISD are receiving a second-rate education, with fewer than one in five students meeting grade level in some schools. On the other hand, in the majority white, predominantly affluent elementary schools in the areas where most current Trustees reside, the majority of the children meet grade level across all grades and subjects tested. The Board consistently prioritizes this cluster of high-performing, predominantly affluent schools at the expense of the rest of the community.[25] Mr. Vaughan brings this Complaint because the at-large election system presently employed in this District denies equal voting opportunity to voters of color and many of the parents of children enrolled in LISD schools, and thereby denies these residents the opportunity to elect candidates of their choosing to represent their communities. Accordingly, Mr. Vaughan sought judicial relief for violations of Section 2 the Voting Rights Act of 1965, 52 U.S.C. § 10301 (the "Voting Rights Act") and the

---

[25] ROA.4-5.

Fourteenth and Fifteenth Amendments of the United States Constitution, U.S. Const. amend. XIV and XV ("Constitution").[26]

Like many suburban school districts, LISD has experienced dramatic student demographic changes in recent years. Consider that in the 2003-04 school year, the racial composition of the LISD student body was about 69% white, and only 12% of students came from economically disadvantaged backgrounds. As of the 2020-21 school year, the demographic breakdown of LISD's more than 49,000 students was 37.6% white, 30.5% Hispanic, 15.5% Asian, 11.6% African American, 4.4% two or more races, 0.4% American Indian, and 0.1% Pacific Islander. Additionally, about 31.4% of LISD's students are classified as economically disadvantaged and about 18.5% are English Learners. An economically disadvantaged student is defined by the TEA as a student who is eligible for free or reduced-price lunch meals or eligible for other public assistance. English Learners are defined as students whose primary language is other than English who are in the process of acquiring English speaking skills.[27]

**Frank Vaughan**

---

[26] ROA.5.

[27] ROA.10.

Frank Vaughan is a registered voter who lived, at the time of the filing, in an ethnically diverse, economically disadvantaged section of LISD.  Important to the issues before this court, he is also a non-minority, white male.

**At-Large Election System**

1.      Under the current at-large election system, all voters within LISD are permitted to vote on the candidates for every Board seat. Trustees serve staggered three-year terms in positions called "places" – which have no geographic significance.  In other words, elected trustees do not represent any specific territory or sub-district within LISD.  The at-large system discourages minority or minority-preferred candidates from seeking office because it effectively functions as a white-controlled referendum on all candidates where a bloc of white voters controls all seven Trustee positions.[28] The impact of this perpetually monolithic Board is best measured by the inequality that exists among the District's elementary schools. An achievement gap exists between the lowest performing schools in the district that are attended by children who are mostly Hispanic, poor, and learning English as a second language and those high-performing schools situated in the neighborhoods in which most of the all-white members of the LISD board of trustees reside.  Across LISD, a significant achievement gap exists for African American and Latino

---

[28] ROA.5.

students.  About 31% of Afridan American students and 37% of Hispanic students met grade level in 2021, compared with almost 70% of white students.

## 1.    Discriminatory Effects of At-Large Elections

Given the diverse makeup of LISD's Citizen Voting Age Population ("CVAP"), with people of color comprising 35% of the CVAP, one would expect at least one non-white candidate to be elected as a Trustee.  However, the at-large system of voting discourages African American, Hispanic, Asian, and other minority preferred candidates from running, because potential candidates know that they have no likelihood of winning.  Minority preferred candidates face a white voting bloc able to bar such candidates from every seat in the District.  The control white voters wield over elected positions in government is compounded by issues such as low voter turnout and lack of a federal or state election holiday.[29]  Moreover, voting in LISD is racially polarized.  Comprising a majority of CVAP, whites vote as a distinct bloc, resulting in the defeat of minority preferred candidates for Board seats.  African Americans, Hispanics, and Asians within LISD are also a "politically unified group," who vote cohesively as a bloc when a candidate of their choice is pitted against a white candidate. Further, the African American, Hispanic, and Asian population in LISD are geographically compact.  If African American, Hispanics, and Asian eligible voters are considered together, they would constitute a majority of eligible

---

[29] ROA.16-17.

12

voters in at least one properly apportioned single-member electoral district. Yet, the current at-large system promotes racial polarization, which leads to limited representation of, and ultimately, indifference to, the interests of the non-white community in LISD.[30] People of color in LISD have also faced a parallel history of public and private discrimination on the basis of race and/or ethnicity in employment, education, health services, and housing. Historical discrimination against people of color have contributed to a lower socioeconomic status, and forms of discrimination and racism against people of color exist to this day. This history, along with the vote dilution created by the LISD electoral system, prevent minorities from political participation on equal footing with white residents of LISD.[31]

### Brewer Storefront PLLC

Brewer Storefront is the community-service legal affiliate of the national litigation firm of Brewer, Attorneys & Counselors with offices in Dallas and New York. Founded in 1995, the Brewer Storefront tackles local and national issues, providing legal assistance to a wide range of individuals, business and community entities in need. Appellants Michael J. Collins and William A. Brewer III ("Attorney Appellants") have spent thousands of hours and several decades advocating for representative voting schemes through their involvement with the Storefront and

---

[30] ROA.17.

[31] ROA.17-18.

13

representation of clients like Mr. Vaughan. The Storefront has successfully challenged violations of the Voting Rights Act on behalf of communities of interest in previous actions. The Storefront successfully resolved Voting Rights Act cases with the Richardson Independent School District in January 2019, the Carrollton-Farmers Branch Independent School District in 2015, and the Grand Prairie Independent School District in 2014. All districts now utilize remodeled voting systems. The Storefront also secured trial victories in Voting Rights Act cases against the Irving Independent School District in 2014, the City of Farmers Branch in 2012, and the City of Irving in 2009. Those lawsuits paved the way for the formation of new voting systems and the election of minority candidates.

## VI.

## SUMMARY OF ARGUMENTS

The district court erred by awarding LISD attorneys' fees pursuant to 52 U.S.C. § 10310(e) and 28 U.S.C. § 1927 based on a finding that Vaughan's claims were frivolous and unreasonable due to the lower court's determination that Vaughan lacked standing under the VRA. The VRA confers standing on all "aggrieved persons," and Vaughan—although white—alleged that he and his community were harmed by the racist   electoral processes in his electoral district. Although the lower court disagreed, that is not a valid basis for sanctions.

14

In addition, the district court abused its discretion in awarding sanctions pursuant to Section 1927 based on zealous advocacy during depositions by Vaughan's counsel.

The district court erred in awarding attorneys fees jointly to Vaughan and his counsel pursuant to Section 1927 because the statute does not authorize an award of attorney's fees against a represented party. The district court also erred in sanctioning counsel's law firm, because Section 1927 only permits sanctions against a specific attorney.

The district court erred by awarding LISD attorneys' fees pursuant to 52 U.S.C. § 10310(e) and 28 U.S.C. § 1927 based on a finding that Vaughan's claims were frivolous and unreasonable due to the lower court's determination that Vaughan lacked standing under the VRA. The VRA confers standing on all "aggrieved persons," and Vaughan—although white—alleged that he and his community were harmed by the racist    electoral processes in his electoral district. Although the lower court disagreed, that is not a valid basis for sanctions

# VII.

## APPLICABLE STANDARDS

An order awarding sanctions under 28 U.S.C. § 1927 is reviewed for abuse of discretion.[32] "A district court abuses its discretion if it awards sanctions based on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[33] Similarly, the decision whether to award attorney's fees under 52 U.S.C. § 10310(e) is committed to the discretion of the district court.[34] The district court's findings of fact are subject to clear error review; however, we review de novo the conclusions of law underlying the grant or denial of attorney's fees.[35]

# VIII.

## ARGUMENTS AND AUTHORITIES

A.    THE DISTRICT COURT ERRED IN AWARDING FEES UNDER 52 U.S.C. § 10310(e).

1.    Attorney's Fees Award Under 52 U.S.C. § 10310(e)

The prevailing party in an action to enforce the Voting Rights Act may be awarded attorney's fees under 52 U.S.C. § 10310(e). Prevailing plaintiffs are presumptively awarded attorney's fees while fees to a prevailing defendant are

---

[32] *Procter Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002).

[33] *Id.* (quoting *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999)).

[34] *See Dean v. Riser*, 240 F.3d 505, 507 (5th Cir. 2001) (considering similar attorney's fee provision).

[35] *See id.*

"presumptively unavailable"[36]—indeed only proper—upon the court's finding that plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.[37]

## 2.    The District Court's Ruling

The district court ruled that LISD was entitled to fees based on findings that LISD is a prevailing party and that Vaughan's claims were frivolous and unreasonable. In support of the second determination, the Sanctions Order, stating that standing is "foundational" to any claim, found that Vaughan's arguments in favor of standing were "unreasonable" because they were based, in the court's characterization on allegations that "other people suffered harm."[38]

## 3.    Vaughan's Claims Are Not Frivolous Unreasonable, or Without Foundation.

Vaughan sued for declaratory and injunctive relief under Section 2 of the VRA and the Fourteenth and Fifteenth Amendments of the United States Constitution, arguing that that LISD's at-large electoral system improperly dilutes the votes of racial minorities—thus resulting in lopsided, racially discriminatory governance of

---

[36] Section 10310(e) and 42 U.S.C. § 1988(b), providing for an award of attorney's fees to the prevailing party in defense of Civil Rights, are considered identical by courts and interpreted similarly. *See Hanrahan v. Hampton*, 446 U.S. 754, 758 n. 4, 100 S. Ct. 1987, 1989 n. 4 (1980) (*per curiam*).

[37] *Dean v. Riser*, 240 F.3d. 505, 508 (5th Cir. 2001).

[38] ROA.2008.

the schools which Vaughan's children attended.  Vaughan identifies as white, and never pleaded otherwise, but argued that his own children were disadvantaged by the "pervasive geographical discrimination" effected when minority, low-income residents had their votes underweighted.[39]  Moreover, Vaughan contended that LISD's unconstitutional, at-large districting practice denied all residents and stakeholders the "equitable system of representation" which the VRA and the Constitution guarantee.[40]   Awarding sanctions, the district court deemed it "frivolous" for a white voter to sue to redress systemic racism that, purportedly, does not harm him.[41]  Appellant respectfully disagrees: at a minimum, the premise that white voters have a constitutionally cognizable stake in a non-racist electoral process constitutes a plausible  argument for an extension of existing law.   Indeed, Vaughan's standing arguments accord with prevailing law governing analogous types of claims.  The district court's award of punitive sanctions against Vaughan and his counsel for the mere commencement of Vaughan's case[42] therefore constitutes an abuse of discretion.

---

[39] *See* ROA.12.

[40] ROA.21.

[41] *Id*

[42] Although the district court additionally considered, and deemed sanctionable, certain conduct in depositions, it also held that "the very filing of this action" was sanctionable standing alone. *See* ROA.2011.

The district court acknowledged that the VRA confers standing on all "aggrieved persons" to challenge race-based infringements of voting rights.[43] But the Summary Judgment Order cited only a single, non-binding decision from another circuit, *Perry-Bey v. City of Norfolk*,[44] for the direct proposition that a VRA plaintiff lacks standing as an "aggrieved person" if he is not a member of the racial minority group whose voting rights are infringed.[45] The *Perry-Bey* case is inapposite on numerous grounds—involving a plaintiff who did not even allege that she was a registered voter in the relevant jurisdiction.[46] What is more, the Supreme Court's racial gerrymandering jurisprudence emphasizes that standing is a difficult, grey area, where "demonstrating [] individualized harm . . . may not be easy" because it is "difficult to discern why a particular citizen was put in one district or another."[47] Thus, **any** plaintiff who "resides in a racially gerrymandered district . . . has been denied equal treatment because of the legislature's reliance on racial criteria, and therefore has standing to challenge the legislature's action."[48]

---

[43] *See* ROA.2011. *citing Roberts*, 883 F.2d at 621 (quoting *Allen*, 393 U.S. at 557); *see also* 52 U.S.C. § 10302(a).

[44] *See* ROA.988.

[45] CITE ROA.989. *Perry-Bey v. City of Norfolk, Va.,* 678 F. Supp. 2d 348, 363 (E.D. Va.), *aff'd*, 333 F. App'x 733 (4th Cir. 2009)

[46] *See Perry-Bey*, 678 F. Supp. 2d at 364.

[47] *United States v. Hays*, 515 U.S. 737, 744, 115 S. Ct. 2431, 2436, 132 L. Ed. 2d 635 (1995)

[48] *Id.*

Against this backdrop, it was an abuse of discretion for the district court not merely to reject, but to punish, Appellant's attempt to stake out ground for VRA and constitutional challenges to at-large voting systems analogous to the standing accorded for gerrymandering plaintiffs. The Sanctions Order's reliance on *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc*., No. 12-2143-STA, 2012 WL 3683492, at *1 (W.D. Tenn. Aug. 24, 2012), an unpublished opinion that sanctioned a lawsuit advancing conspiracy theories about President Barack Obama's birth certificate, was particularly inappropriate given the inapposite, frivolous nature of that case.   The commencement of Vaughan's lawsuit, by contrast, was not unfounded or in bad faith—so sanctions under § 1927 are inappropriate.

## B.   THE DISTRICT COURT ERRED IN AWARDING ATTORNEYS' FEES PURSUANT TO 28 U.S.C. 1927

### 1.   Attorney's Fees Award Under 28 U.S.C. § 1927

Pursuant to Section 1927, a district court may shift reasonable fees to an attorney who so multiplies the proceedings in any case "unreasonably and vexatiously."[49] Sanctions under this statute require "'clear and convincing evidence, that *every facet* of the litigation was patently meritless' and 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'"[50] Such

---

[49] *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002).

[50] *Bryant v. Military Dep't*, 597 F.3d 678, 694 (5th Cir. Miss. 2010) (emphasis in original). (citing *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002).

sanction should only be employed in circumstances "evidencing a serious and standard disregard for the orderly process of justice, less the legitimate zeal of an attorney in representing a client be dampened."[51] Prototypical examples warranting such sanctions may include repeated filings despite warning from the court.[52] The court may only shift fees to counsel, not parties.[53]

### 2.    The Lower Court's Ruling

The lower court awarded attorneys' fees jointly against plaintiff and his counsel, pursuant to 28 U.S.C. 1927, based on two findings. First, the district court found that LISD proved by clear and convincing evidence that Vaughan's case was "unwarranted and should neither have been commenced or persisted in," because Vaughan failed—in the court's view—to plausibly allege standing under existing law or argue that a change in the law was warranted.[54] The mere fact of filing the action was so "unreasonable and vexatious" that Vaughan's attorneys deserved to be sanctioned.[55] Second, the lower court found, based on their conduct with respect to depositions, that Vaughan's attorneys' "manner" in the litigation "suggest[ed] an improper motive for maintaining the lawsuit" and, therefore, "multiplied these

---

[51] *See Ayla v. Enerco Gp., Inc.*, 569 F. App'x 241, 251 (5th Cir. 2014).

[52] *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d at 526.

[53] Id.

[54] Sanctions Order at 8 (citing *Lewis v. Brown & Root, Inc.* 711 F.2d 1287, 1292 (5th Cir. 1983)).

[55] Sanctions Order at 9.

needless proceedings."[56] In so doing, the district court cited to the number of depositions noticed, the length of the depositions (each seven hours), and the substance of the topics broached.[57]

### 3.    The District Court erred in awarding fees against Plaintiff-Appellant under 28 U.S.C. 1927 as a matter of law, because the statute does not permit fees to be awarded against a party.

A district court may shift reasonable fees to "[a]ny attorney . . . who . . . multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Under the plain terms of that statute, then, these sanctions are imposed only on offending attorneys — clients may not be ordered to pay such awards. *Procter Gamble Co.*, 280 F.3d at 525; *see also Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416 (5th Cir. 1994). The award of fees against Vaughan under Section 1927 fails as a matter of law and should be reversed.

### 4.    The District Court erred in awarding sanctions against Brewer StoreFront LP under 28 U.S.C. 1927, because the statute permits sanctions against attorneys, not law firms.

The language of § 1927 clearly excludes law firms and finding support in the analogous jurisprudence of Rule 11, the Sixth, Seventh, and Ninth Circuits chose not

---

[56] ROA.85.

[57] ROA.85.

to consider the broader context of § 1927.[58] Accordingly, the fees awarded against the Storefront should be reversed.

## 5.   The District Court's award of sanctions against Attorney-Appellants was an abuse of discretion.

The district court's first basis for an award of sanctions—that the mere filing of Vaughan's lawsuit was unreasonable and vexatious—is clear error. As argued in Section II, the confluence of Plaintiff-Appellant's individual circumstances, the serious allegations in the complaint, and the lack of complete clarity in this area of the law merit serious consideration of the contours of standing here.[59] Although the lower court may have evaluated the facts and law and disagreed, such disagreement cannot then serve as a basis to sanction Vaughan's counsel (and Vaughan himself).[60] The Sanctions Order places much weight on Summary Judgment Order's prior ruling on standing, asserting that failure to pass muster on a "bedrock" constitutional principle supports a finding that Vaughan's counsel "recklessly pursued a claim."[61] A rule that permits sanctions simply based on a court's view of what constitutes

---

[58] *See, e.g., Kaass Law*, 799 F.3d at 1293 (noting that its own previous interpretations of § 1927 limited the statute's application to attorneys and other individuals). *See, e.g., Claiborne v. Wisdom*, 414 F.3d 715, 722–23 (7th Cir. 2005) (examining the Fourth and Eleventh Circuits' decisions regarding whether § 1927 applies to law firms).

[59] Indeed, Vaughan sought to appeal the lower court's Summary Judgment Order based on lack of standing. However, the appeal became moot because he moved out of the boundaries of LISD.

[60] *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d at 525-26.

[61] Sanctions Order at 8.

23

"core" legal principles, of course, is not only without basis in the statute, but also dangerously variable depending on which judge counsel may find themselves before.

The lower court also abused its discretion in finding that counsel's conduct in connection with depositions was a valid basis for sanctions. The Sanctions Order unfavorably points the fact that Vaughan noticed four non-expert depositions which lasted seven hours and spanned a variety of "irrelevant" topics."[62] Tellingly, LISD never moved to quash the depositions, and at the depositions only made "form" objections.[63] Nor does the Sanctions Order point to any procedural impropriety on the part of Vaughan's counsel.[64] Unlike circumstances in which counsel have been put on notice that its conduct was objectionable, e.g., repeated filings despite warnings from the court,[65] counsel's conduct here was perhaps zealous and thorough—but that, without more, cannot serve as a basis for sanctions.[66]

Therefore, the lower court abused its discretion in finding that LISD provided clear and convincing evidence of vexatious and harassing litigation misconduct meriting sanctions here.

---

[62] Sanctions Order at 10.

[63] ROA.1075. [Exs. A-E].

[64] Sanctions Order 9-10.

[65] *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d at 525.

[66] *Id*.

## IX.

## <u>CONCLUSION</u>

Appellants respectfully request the district court's Sanctions Order be reversed and remanded.

Respectfully submitted,

**BREWER STOREFRONT**

By: */s/ William A. Brewer III*     
    William A. Brewer III
    State Bar No. 02967035

1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone:  (214) 653-4000
Facsimile:   (214) 653-1015

**ATTORNEY FOR APPELLANTS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this document was served by delivering it to counsel of record through this court's CM/ECF system on April 28, 2022.


<u>/s/ William A. Brewer, III</u>
William A. Brewer, III

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1.      This brief complies with the type-volume limitations set forth in <u>Fed. R. App. P. 32(a)(7)(B)</u> because it contains 4,261 words, excluding the portions exempted under <u>Fed. R. App. P. 32(a)(7)(B)(iii)</u>; and

2.      This brief complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u> and the style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because it has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14 point type.

Dated:  April 28, 2022

*/s/ William A. Brewer, III*
William A. Brewer, III

**ATTORNEY FOR APPELLANTS**